HEARD NOVEMBER TERM, 1873.

## ZORN vs. RAILROAD COMPANY.

Where, in an action to foreclose an unrecorded mortgage against a subsequent purchaser of the mortgaged premises, the defense is that of purchase for valuable consideration without notice, it will not avail, if the consideration consisted in merely giving credit, for the amount of the purchase money, on claims held by the purchaser against the vendor.

BEFORE MAHER, J., AT COLLETON, FEBRUARY TERM, 1873.

This was a bill in equity for foreclosure by William Zorn against the Savannah and Charleston Railroad Company. The case was referred to a Referee, whose report to the Court contains a full state-

ment of the facts and points of law involved in it. The report is as follows:

On the first day of January, 1858, the Charleston & Savannah Railroad Company, a body corporate, for the purpose of raising money to complete its road, conveyed, by way of mortgage, to Isaac Hayne and others, all its present and future to be acquired property, with all its rights, privileges and franchises, in, to, or concerning the same; said company covenanting, further, " to execute and deliver any further necessary and reasonable conveyance of the premises, or any part thereof, to the party of the second part—Hayne and others, trustees—their successors or assigns,   *   *   * particularly for the conveyance of any property subsequently to the date hereof acquired by the party of the first part, (the Charleston & Savannah Railroad Company,) and comprehended in the description contained in this indenture."

This deed was duly recorded on the 21st day of January, 1858.

Subsequent to the date of said conveyance, on the 10th day of February, 1858, the Charleston & Savannah Railroad Company purchased from William Zorn, trustee of Philip S. Price and Emma N., his wife, a plantation in Colleton, known as " Slandovery," giving its bond for $12,600, conditioned for the payment of $6,300, the purchase money, to secure which the said company executed, at the same time, its mortgage of the premises to the said William Zorn, trustee. This mortgage was not recorded until after the commencement of this suit, viz: on the 30th November, 1869.

The Charleston & Savannah Railroad Company having failed to fulfil the conditions of the mortgage to Hayne and others, trustees, the said mortgage was foreclosed according to its provisions, and the entire property of the company, including, it is claimed, the plantation mortgaged to Zorn, was sold at public auction, in the city of Charleston, on the 20th day of November, 1866, and purchased by James H. Taylor, as agent for the bondholders, to secure. whom the conveyance to Hayne and others had been executed.

These bondholders having organized themselves into. a body corporate, under the name of the Savannah and Charleston Railroad Company, and obtained a charter, Hayne and others, trustees, conveyed to them, by deed, dated January 31st, 1867, the premises mortgaged to and sold by said trustees, and purchased as above mentioned ; in which indenture Hayne and others, trustees,

being the party of the first part, and the Savannah and Charleston Railroad Company the party of the second part, the said party of the second part " agree unto and with the party of the first part to take, accept and hold the aforesaid granted and assigned premises, liable and subject to the statutory liens to which the party of the first part would be liable to under the indenture, by way of mortgage, * * * * which may be prior to or superior to said mortgage."

There is no proof that this deed was ever recorded.

On the 15th day of June, 1869, the mortgage to Zorn being yet unrecorded, plaintiff filed his bill for foreclosure, and prayed process of subpœna against the Savannah and Charleston Railroad Company and J. Reid Boylston, its President.

It seems that Boylston was not President, as the answer is signed by Isaacs, as President.

On the 16th day of October following, the answer of the defendant was filed, which denies the liability of defendant for the debts of the Savannah and Charleston Railroad Company, and claimed that defendant is a subsequent purchaser for valuable consideration without notice of the premises in question.

The testimony, most of which was taken by commission, fails to bring home to the officers or Directors of the Savannah and Charleston Railroad Company any notice whatever of the existence of Zorn's mortgage—though it is proven to have been spread on the books of the Charleston and Savannah Railroad Company—nor does the testimony, on the part of the defense, show that the covenant, contained in the mortgage to Hayne and others, trustees, to make further conveyance of after acquired property, was ever executed by the Charleston and Savannah Railroad Company as to " Slandovery."

The amount due on the bond to plaintiff is ten thousand seven hundred and one dollars and eigthty-five cents, and interest from November 22, 1872.

It is claimed by the plaintiff that as the purchase by the Charleston and Savannah Railroad Company from Zorn, trustee, of the mortgaged premises, was subsequent to the date of the conveyance to Hayne and others, trustees, they are not covered by that conveyance, on the ground that future to be acquired property cannot be conveyed by deed ; it is a bare possibility, and cannot pass by deed.—Bouv. Law Dic., Title " Possibility ;" *Adams* vs.

*Chaplin,* 1 Hill Ch., 265 ; *Wallace* vs. *Ford,* 3 Dana, 505 ; *Dawson* vs. *Dawson,* Rice Eq., 243.

2. That, as to future to be acquired property, the deed to Hayne and others was only a covenant to convey, which, as to the mortgaged premises herein mentioned, was never executed.

3. That even supposing that the Charleston and Savannah Railroad Company could convey property not yet acquired, and that some title in the premises herein mentioned was actually conveyed to the trustees, the said trustees could only acquire the equity of redemption, and that the Savannah and Charleston Railroad Company could and did purchase no more, is evidenced by the wording of the deed from Hayne and others to the Savannah and Charleston Railroad Company, wherein the latter agree to "take, accept and hold the aforesaid granted and assigned premises, liable and subject to any lien or liens to which the party of the first part (Hayne and others) would be liable to under the mortgage."

4. That the Savannah and Charleston Railroad Company is not a purchaser for valuable consideration without notice, "for, to sustain this plea, it must appear that the legal title was purchased."—*Brown* vs. *Wood & Ashley,* 6 Rich. Eq., 155 ; *Bush* vs. *Bush,* 3 Strob. Eq., 131.

The Savannah and Charleston Railroad Company being in possession of the mortgaged premises, and claiming under the sale of Hayne and others, trustees, reply :

1. That the Charleston and Savannah Railroad Company, in mortgaging all its "rights and farnchises" to Hayne and others, trustees, "the right to acquire property being one of the rights passed also, and property after acquired by virtue of its exercise is acquired and held under and subject to the conditions of the mortgage."—Pierce Am. R. R. Law, 531 ; Redfield on Railways, 590.

2. That the mortgage of Zorn *never* having been recorded within the period prescribed by the Statute of 1843, the Savannah and Charleston Railroad Company is a purchaser for valuable consideration without notice.—*Williams* vs. *Beard,* 1 S. C., 309.

3. That the actual notice to supply the place of recording must be *full, explicit, and clearly proved.—City Council* vs. *Page,* Speer, 212 ; *Harris* vs. *Anderson,* 2 Bail., 315 ; *Martin* vs. *Sale,* 1 Bail. Eq., 4.

The facts and the law applicable to them have been fully stated ;

and, in conclusion, the Referee reports, as special matter, that the whole of this controversy is narrowed down to the following issues:

1. Can future to be acquired property be conveyed by deed?

2. Did these mortgaged premises pass under the deed to Hayne and others, trustees?

3. If the above issues are settled affirmatively, is the Savannah and Charleston Railroad Company a subsequent purchaser for valuable consideration without notice.

The judgment of the Circuit Court is as follows:

MAHER, J. This is an action for foreclosure of a mortgage, which was commenced prior to the passage of the Code. It was brought on to be tried before the Court at the February Term, 1873, upon the report of Robert Campbell, Esq., Special Referee, to whom, by an order in the cause, dated the 30th November, 1869, it had been referred to inquire and report *upon the facts* and the law applicable thereto. It is not deemed necessary to set forth the facts found by the Referee, and without more than this general reference to the report, I proceed to the consideration of the questions of law involved.

Even conceding (*vide Curtis* vs. *Leavitt*, 15 N. Y., 1 Smith, 9, 220, 221,) that the bonds and mortgage issued and executed by the Charleston and Savannah Railroad Company, for the purpose of raising money to build and equip the road, were *ultra vires*, as unauthorized by the charter, it is very clear that the subsequent recognition and sanction of these instruments by the Legislature, in the Act incorporating the Savannah and Charleston Railroad Company, (this defendant,) operated, retrospectively, to give them validity *ab initio*. No vested rights of the plaintiff under his mortgage were in any manner disturbed, and, as a remedial law, healing an infirmity which originated only in the absence of express authority in the original charter, it was a competent act of legislation, and availed to make the acts of the company as good and effectual, to all intents and purposes, as if the power had been conferred in the first instance.—Cooley Con. Lim., 369 to 383.

The mortgage to the trustees neither professed to convey *in presenti* property not then owned by them, nor, in the nature of things, could possibly so operate, either at law or in equity. It was, nevertheless, a binding contract in respect to future acquisitions of property, embraced within the description of the deed, which attached to such property when and as acquired; a contract which

the Court, on its equity side, would specifically enforce, by compelling the execution of a mortgage or other assurance, in compliance with the company's covenant. And as equity holds that as done which ought to have been done, and as done, too, at the time when, according to the agreement, it should have been performed, it follows that the lien of the trustees' mortgage attached to the premises conveyed by the plaintiff to the company upon the execution and delivery of the conveyance, and this as effectually as if a mortgage had then been executed in pursuance of the covenant for further assurance.—2 Story Eq., Sec. 1,040, b.; *Row* vs. *Dawson*, 2 Lead. Cas. Eq., Am. Notes, 41, Law Lib., 224; *Alston* vs. *Bank*, 2 Hill Ch., 235; *Roddy* vs. *Elam*, 12 Rich. E., 343; *Duke* vs. *Palmer*, 10 Rich. E., 380; 1 Story Eq., 364, g.; *Pennock* vs. *Coe*, 23 How. U. S., 117; *Galveston R. R.* vs. *Cowdrey*, 11 Wall, 459; *Pierce* vs. *Milwaukee and St. Paul R. R. Co.*, 24 Wis., 551, 1 Am. Rep., 203; *Philadelphia, W. and B. R. Co.* vs. *Waulpher*, 64 Penn., 366, 3 Am. Rep., 596; *Seymour* vs. *Canandaigua and N. F. R. R. Co.*, 14 How. N. Y., 532.

But the trustees' mortgage could attach to after acquired property only in the condition in which it came to. the hands of the mortgagor, and in subordination to all liens and equities subsisting upon or in respect to the same. The conveyance which the company received from the plaintiff, and the mortgage which it gave back to secure the purchase money, must be regarded as a single transaction, and no lien then impending over the company, whether in the shape of a general mortgage or a judgment, could be permitted to interpose and displace the mortgage for the purchase money.— *United States* vs. *New Orleans R. R.*, 12 Wall, 362; *Allston* vs. *Bank*, 2 Hill C., 235.

The plaintiff's mortgage was, therefore, the paramount lien upon the land in question, and his failure to record the same according to law no wise affected its superiority over the trustees' mortgage; for neither the trustees nor the bondholders, (the beneficiaries of the mortgage,) were subsequent creditors, or incumbrancers, within the meaning of the recording Acts.— *United States* vs. *New Orleans R. R.*, 12 Wall, 362.

The bondholders, through their agent, bid in the property sold under this mortgage, in order to save their debt. At their instance the bid was transferred to the defendant, a corporation of which they constituted the individual members, and the charter of which

was based upon their purchase, and the trustees made titles accordingly. It was substantially a conveyance to the bondholders themselves, though in their corporate name and charter certainly they had the right to become the purchasers at their own sale, and the legal title unquestionably passed from the mortgagor to the defendant company, through the exercise of the power conferred in the deed. Although the trustees' mortgage attached to the land in question, subject to the lien of the plaintiff's mortgage, and the latter held good, notwithstanding the failure to record it, and although in a contest for priority over the proceeds of sale, under proceedings for foreclosure, the trustees' mortgage must have yielded precedence to its competitor, still the bondholders, whether as individuals or as corporators, are not precluded from availing themselves of the want of notice, as subsequent purchasers for value, if they can prove themselves to be such. They were, in fact, purchasers only of the equity of redemption, yet they may insist that the plaintiff is precluded, by his failure to put his mortgage on record within the time limited by the statute, from interposing the estate which he acquired by it in bar or derogation of the estate for. which the defendant, claiming to be within the terms of the Act, has paid.—*McKnight* vs. *Gordon*, 13 Rich. E., 222, 232; *Williams* vs. *Beard*, 1 S. C., 309, 323.

The only question that remains, therefore, is, whether the defendant, who is, beyond controversy, a purchaser without notice, is also one for valuable consideration.

The plea of purchase for valuable consideration without notice, among other essential requisites, must aver distinctly that the consideration money mentioned in the deed was *bona fide* and truly paid, independently of the recital of the purchase deed, for if the money be not paid the plea will be overruled, *as the purchaser is entitled to relief against payment of it.*—Sugden, Ven. and Pur., 1069. If the purchaser has paid no part of it, then the plea is null; if he has paid a part, he is entitled to protection *pro tanto.*—Story Eq. Pl., Sec. 604, *a*; *Bassett* vs. *Nosworthy*, 2 Lead. Cas. Eq., Am. Notes, 40 Law Lib., 112, 113; *Dillard* vs. *Cracker*, Spear's Eq., 29; *Bush* vs. *Bush*, 3 Strob. Eq., 131. And the purchaser must not only aver in his plea, but must also *prove*, that he had paid the consideration before he had notice. His answer, if not responsive to any allegation of the bill, is not evidence for him on that point.—*Ellis* vs. *Wood*, 9 Rich. Eq., 19. It has been repeatedly held in

Columbia, November, 1873.

this State that a purchaser at Sheriff's sales, who is also the plaintiff in the executions to whom the money is payable, and who, therefore, parts with no money, is not entitled to the protection of a *bona fide* purchaser for valuable consideration.— *Williams* vs. *Hollingsworth*, 1 Strob. Eq., 103; *Schultz* vs. *Carter*, Spear's Eq., 542. This is the established doctrine in New York.—*Dickerson* vs. *Tillinghast*, 4 Paige, 215. The leading case there has been followed and affirmed in a number of subsequent cases on the subject. The question in that case was between the holders of an unrecorded mortgage and a subsequent grantee of the mortgaged premises, the consideration of whose purchase was a precedent debt. Chancellor Walworth, upon a careful consideration of the question, both upon principle and authority, held that the mortgagee was entitled to the priority. He considered the principle of equity to be well settled, that if one take title to real estate in payment of or as security for a previous debt, without giving up any security, or divesting himself of any right, or placing himself in a worse situation than he would have been if he had received notice of a prior equitable title or lien previous to his purchase, a Court of Equity will not permit him to retain the title which he had thus obtained, to the injury of one having a prior equity.— *Van Heusen* vs. *Radcliff*, 17 N. Y., 3 Smith, 580, 582. Such subsequent purchaser sustains no injury by being postponed in right to the prior unrecorded deed or mortgage. He is placed in no worse condition than he was before he received his deed or mortgage, and ought not to disturb any prior acquired rights.— *Tiffany* vs. *Warren*, 24 How. N. Y., 293, 297.

The answer of the defendant thus sets forth the averment of payment of the purchase money : " That the consideration aforesaid, for the purchase aforesaid, at the sale aforesaid, has been duly paid by this defendant, and the said Charleston and Savannah Railroad Company fully satisfied therefor, prior to the notice of the claim of the said plaintiff to defendant, *by receipt in due form* to the said Charleston and Savannah Railroad Company, for the amount thereof *on the bonds of the said Charleston and Savannah Railroad Company, due to the members of this corporation.*" This allegation was not proved, as it certainly should have been ; but taking it as proved, it amounts to this, that the bondholders credited the amount of the consideration money on the bonds in their hands. I am unable to distinguish the case from those cited as to purchases by execution creditors. The bonds are still held by the corporation

or its members; no security has been given up, no money parted with. How would the situation of the defendant or its members be made worse than it was before the receipt upon the bonds, by subjecting the land to the plaintiff's mortgage? The receipts are not conclusive against the holders of the bonds, if any part of the consideration therefor has failed. The plaintiff has an equity that commends itself to the favorable consideration of the Court, growing out of the original supremacy of his mortgage, and the circumstance that his claim is for the purchase money of premises which are held by the defendant, without any actual consideration having been paid for the same. If the Charleston and Savannah Railroad Company had released its equity of redemption to the trustees, in satisfaction of the mortgage debt, and the Trustees had, thereupon, at the instance of the bondholders, conveyed to this defendant, without any pecuniary or other valuable consideration, moving independently from the latter, it would, I apprehend, have been difficult to find any principle of equity upon which the lien of the plaintiff's mortgage could have been made to give way. The effect of the release would only be virtually to eliminate the defeasance from the mortgaged deed, thus perfecting it as a legal conveyance, operating as such from the date of its execution, but, surely, not to relieve it from its original subordination to the superior lien of the plaintiff's mortgage. Now the bondholders have acquired, although in a more circuitous way, the mortgagor's legal title, without other consideration than a mere receipt *pro tanto* upon the bonds secured by their mortgage. I cannot perceive in what respect their present position is more favorable to the defense set up in the answer than it would have been had the equity of redemption been released as suggested. My conclusion is, that the defendant is not a purchaser for valuable consideration, within the meaning of the rule which protects such purchasers, and, therefore, that the plaintiff is entitled to the relief demanded in his complaint, and to judgment for foreclosure and sale of the premises mentioned and described in his mortgage, and also in the complaint. The defendant, however, is not liable for the mortgage debt, and, therefore, no judgment can go against it for any deficiency in the proceeds of sale to satisfy the same.

It is ordered that the plaintiff have leave to enter judgment for the sale of the said mortgaged premises, and foreclosure of the defendant's equity of redemption therein, for the satisfaction of the

amount reported to be due on the security thereof, with interest thereon from the date specified in the Referee's report, that is to say, the sum of ten thousand seven hundred and one 85-100 dollars, with interest thereon from the 22d November, 1872. And also for his costs and disbursements in this action, to be paid to him by the defendant, such judgment to be entered, in the usual form, according to the rules and practice of this Court, save in this, that the defendant shall not be adjudged liable to pay any part of the amount so reported due, if the proceeds of sale should prove insufficient to satisfy the same; but shall, in any event, be liable for the costs and disbursements aforesaid. If need be, the plaintiff may, upon notice, apply at Chambers for a settlement of the form of judgment to be entered herein.

The defendant appealed on the following ground:

1. Because it is not necessary to the defense of "a purchaser for valuable consideration without notice" that money itself should actually be paid.

2. Because if generally necessary it is not so under the circumstances of this action.

3. Because if necessary under the circumstances in this action, the assumption that no *money* actually was paid by the purchaser is unwarranted by the answer (the evidence of it) relied upon by His Honor the Circuit Judge in his decision, " that the answer states that the consideration aforesaid, for the purchase aforesaid, at the sale aforesaid, has been only paid by this defendant, and the said Charleston and Savannah Railroad Company fully satisfied therefor prior to the notice of the claim of the said plaintiff to defendant, by receipt in due form to the said Charleston and Savannah Railroad Company, for the amount thereof, on the bonds of the said Charleston and Savannah Railroad Company due to the members of this corporation."

4. Because it necessarily follows from the circumstances in this action that money was actually paid out by the purchasers of the Charleston and Savannah Railroad.

5. Because if there is any doubt as to the actual payment of money, under all the circumstances of this case, a reference should be ordered to inquire into the fact.

*Tracy,* for appellant.

*Williams & Fox,* contra.

Feb. 27, 1874.   The opinion of the Court was delivered by

WILLARD, A. J.   The mortgage of plaintiff was not recorded in due time, and is accordingly void as to subsequent creditors and purchasers for a valuable consideration without notice.— *Williams* vs. *Beard*, 1 S. C., 309.

The only question is, whether the defendants are included in the class of persons entitled under the registration Acts to take advantage of a want of due registration.   This question is still further narrowed down to an inquiry whether the defendants have paid a valuable consideration for the lands covered by plaintiff's mortgage. The question of notice has been determined by the Circuit Court as a question of fact, and no ground appears to disturb its conclusion.

The title set up by defendants to the lands in question was derived through a sale made under a decree of foreclosure upon a mortgage made by the Charleston and Savannah Railroad Company to trustees to secure the payment of bonds, prior to the purchase by that company of the lands of the plaintiff, and to the execution of the mortgage in suit.   The purshasers under such decree of foreclosure were a portion of the whole number of original bondholders, whose bonds were secured by such mortgage.   The only statement of the consideration paid by the bondholders thus purchasing is set forth in the answer in the following language: " and this defendant avers that the consideration aforesaid, for the purchase aforesaid, at the sale aforesaid, has been duly paid by this defendant, and the said Charleston and Savannah Railroad Company fully satisfied therefor, prior to the notice of the claim of the said plaintiff to defendant, by receipts in due form to the said Charleston and Savannah Railroad Company for the amounts thereof on the bonds of the said Charleston and Savannah Railroad Company, due to the members of this corporation."

The proper conclusion from this language is, that whatever may have been the amount bid on such foreclosure sale by the bondholders whose interest is now held by defendants, it was endorsed as so much money paid on the bonds held by the purchasers.   The amount for which the road was purchased is not stated, and we cannot ascertain whether that amount was a nominal or a substantial consideration.   It is difficult to understand by what means the purchasing bondhoders acquired the right to apply the whole purchase money to their particular bonds to the exclusion of the other bond-

Columbia, November, 1873.

holders equally entitled under the decree of foreclosue, but who did not become purchasers under the decree; but it is not important to the plaintiff's rights that this obscure transaction should be resolved, for the burden of showing a clear claim as purchasers for a valuable consideration is imposed by the law upon the defendants, and failing in this respect they cannot obtain the benefit of the registration Acts.

The case, as it stands, is, then, that of an antecedent creditor purchasing the land bound by an unrecorded mortgage at a judicial sale, upon the sole consideration of extinguishing so much of his original indebtedness as equals the sum at which the property was bid off by him.

Although this point does not appear to have been conclusively adjudicated by the Courts of this State, yet authority of abundant weight is afforded by our decisions denying the right of a purchaser under such circumstances to take advantage of the want of registry.— *Williams* vs. *Hollingsworth,* 1 Strob. Eq., 113, per Dunkin, Ch.; *Dillard* vs. *Kirby,* Speers Eq., 27; *Bush* vs. *Bush,* 3 Strob. Eq., 131.

The true rule on this subject is laid down by Chancellor Walworth in *Dickerson* vs. *Tillinghast,* 4 Paige N. Y., 215. Chancellor Walworth states the point so clearly, and exhibits the ground on which the construction of the Acts of registration rests, so far as it regards the requisites to constitute a valuable consideration under those Acts, that a better presentation cannot be made than that afforded by his language in the case just cited. It will be observed that what he says in regard to the construction of the registry laws of New York is directly applicable to our own Acts. He says: "The English registry Acts made the unregistered deed or incumbrance at law wholly inoperative and void, as against a subsequent grantee or incumbrancer. But the Court of Chancery, in accordance with the manifest spirit and intention of the statute, at an early day adopted the principle of considering the prior deed or incumbrance as an equitable title or lien. It, therefore, applied to such cases, the equitable principles which had previously been adopted by that Court in relation to other contests between the holder of an equitable title or lien and a subsequent grantee or mortgagee of the legal title. In accordance with these principles, if the subsequent purchaser or mortgagee was a *bona fide* purchaser, that is, if he had actually parted with his property on the credit of the estate, so as

to give him an equitable claim or specific lien thereon, without notice of the prior equity, and had also clothed that equitable lien with the legal title by taking a deed or mortgage, the Court would not divest him of that legal title or lien in favor of the prior equity. But if he had notice of the prior equity at any time before he had parted with his property on the credit of the estate, and before he had united the subsequent equity with the legal title, he was not considered as entitled to protection against the prior equity as a *bona fide* purchaser.

" The words *bona fide* purchaser, therefore, when introduced into our recording and registry Acts, were intended to be used in conformity with this established meaning thereof, and they must, in the present case, receive the same construction which they had previously received in the Court of Chancery in reference to that principle of equity. If a person has an equitable title to, or an equitable lien upon, real estate, a subsequent purchaser who obtains a conveyance of the legal estate, with notice of that equity, cannot, in conscience, retain such legal title, as he has no equity united with it. So if he merely takes the legal estate in payment of or as security for a previous debt, without giving up any security, or divesting himself of any right, or placing himself in a worse situation than he would have been if he had received notice of the prior equitable title or lien previous to his purchase, this Court will not permit him to retain the legal title he has thus obtained to the injury of another."

This case was directly sanctioned by the Court of Appeals of New York, in *Van Heuson* vs. *Radcliffe*, (17 N. Y., 589), where the same principle was applied to an assignee for the benefit of creditors.

The defendants acquired their legal title from the purchasers under the trust mortgage sale through a transaction, the object of which was to enable such purchasers to get the full benefit of their purchase through the instrumentality of a new corporation to embrace themselves and such others as they might see fit to admit to it.

The title of defendants is no better than that of the purchasers at such sale. Those purchasers paid no real value, but took the property and rights covered by the mortgage in satisfaction of so much of the bonded debt as would equal a sum named by themselves for that purpose, and advanced by way of a bid for the property.

As antecedent creditors, they could not take advantage of the want of registration. In order to acquire, as purchasers, a right not enjoyed as creditors, it was necessary that some new consideration should be paid other than that which was the basis of their claim as creditors. No such consideration appears, and, accordingly, it must be held that they are not entitled to set up the want of registration.

The conclusion above stated disposes of the only question raised by the defendant's appeal.

The appeal should be dismissed and the judgment affirmed.

*Moses*, C. J., and *Wright*, A. J., concurred.